IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
AKRON DIVISION

The J. M. Smucker Company,

     Plaintiff,

  vs.

Hormel Foods Corporation,

     Defendant.

CASE NO.: _____

**COMPLAINT FOR DECLARATORY RELIEF, TORTIOUS INTERFERENCE, AND UNFAIR COMPETITION**

   Plaintiff, The J. M. Smucker Company ("Smucker"), by and through its attorneys, for its complaint against defendant Hormel Foods Corporation ("Hormel") alleges as follows:

   1.   Plaintiff seeks declaratory relief under 28 U.S.C. §§2201-2202 and 15 U.S.C. §1125 and redress pursuant to Ohio common law for Hormel's tortious efforts to derail Smucker's nationwide launch of its new No Added Sugar variety of JIF peanut butter ("JIF No Added Sugar") under the pretense that Smucker's product, which uses a light blue lid and label, infringes Hormel's unregistered trade dress rights to the color teal used in connection with peanut butter.  No consumer would likely confuse clearly-labeled JIF peanut butter with clearly-labeled SKIPPY peanut butter and no reasonable litigant would claim infringement upon these facts.

**Parties**

2.       Founded in 1897 and incorporated in 1921, Smucker is still a family-run Ohio corporation with its principal place of business at One Strawberry Lane, Orrville, Ohio 44667. Smucker's origins in and association with the state of Ohio are widely known.

3.       Hormel is a Delaware corporation registered to do business in Ohio since 1936. Upon information and belief, Hormel maintains multiple regular places of business in Ohio, including the Hormel Foods Cincinnati Sales Office located at 4055 Executive Park Dr., Cincinnati, OH 45241, and its principal place of business is in Minnesota.

**Jurisdiction and Venue**

4.       JIF No Added Sugar, including its packaging and plans for its nationwide launch, was conceived in Ohio and all marketing of the product emanates from there.

5.       In multiple emails and letters to Smucker and its counsel in Ohio, Hormel purports to assert that its sales of SKIPPY creamy style peanut butter (including by necessity in Ohio) have given it unregistered trade dress rights to the color teal used on a container lid that preclude Smucker from its Ohio-based marketing and sale of JIF No Added Sugar.

6.       Hormel has a history of pursuing trademark cases of questionable merit, having tried unsuccessfully to silence a Muppet ("Spa'am"), stop trademarks that included the term "spam" for spam filtering software and, more recently, asserted that consumers would be confused by the use of "black label" terminology on both bacon sold for human consumption and Beggin' dog treats.

7.       Hormel's repetitive and escalating baseless threats and accusations have impacted and threaten to derail Smucker's nationwide launch of JIF No Added Sugar, damaging

Smucker's investment, market momentum, and goodwill in an amount to be determined at trial but in any event believed to exceed $75,000.

8.     Jurisdiction is proper in this Court because this litigation arises under federal law, namely 15 U.S.C. §1052 et seq. (Lanham Act).  The Court has jurisdiction over this action under 28 U.S.C. §1331 (federal question), 28 U.S.C. §1332 (diversity), 28 U.S.C. §1338(a) (trademarks), and 28 U.S.C. §§2201-2202 (Declaratory Judgment Act).  Supplemental jurisdiction over the state law claims also is proper in this Court pursuant to 28 U.S.C. §1367.

9.     This Court has personal jurisdiction over Hormel because Hormel regularly does or solicits business, or engages in other persistent courses of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state; and the causes of action alleged herein arise from Hormel's property (unregistered trade dress rights) based in Ohio and its tortious interference with Smucker's nationwide launch of JIF No Added Sugar peanut butter, which it has purposefully directed at Smucker with the aim of causing tortious injury to and unfairly competing with Smucker in Ohio.

10.     Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b) and 1391(c) because, among other reasons, Hormel is subject to personal jurisdiction in this judicial district, Hormel and its agents have conducted or conduct Hormel's business in this judicial district, and/or because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

**Smucker's JIF No Added Sugar**

11.     Smucker is a leading American food manufacturer.  For more than 120 years, it has provided consumers with countless iconic brands, including JIF® peanut butter products –

which first debuted in 1956 and has been the #1 selling peanut butter brand in the United States for almost forty years.

12.     Since 1968, JIF peanut butter has been sold in a jar with a label featuring three adjacent rectangles in red, blue, and green (the "JIF Color Banner").

13.     The JIF trademark is prominently displayed against the background of the JIF Color Banner in uniquely symmetrical, extra-wide letters.  The JIF lettering has its own cult following of fans who have remarked on social media that the lettering allows the JIF trademark to appear similar even when viewed upside down.

14.     Consumers are highly brand conscious when it comes to purchasing peanut butter. Numerous internet blogs and postings attempt to separate consumers into two camps based on their preference for #1 JIF or #2 SKIPPY.

15.     Consumers who are health conscious, like the target consumers for JIF No Added Sugar, pay even closer attention to the products they are purchasing.

16.     Like its competitors, Smucker uses different lid colors and background label colors to identify particular varieties of JIF peanut butter so that consumers know which variety they are reaching for, including red (creamy), blue (crunchy), and brown (natural).  Other nut-butter products recently sold under the JIF trademark include cookies and cream and cheesecake flavored hazelnut spreads using white lids, almond butter using a reddish-brown lid, and chocolate-flavored nut products using purple packaging.

17.     Also, like its competitor Hormel, Smucker embosses its plastic lids with the stylized design version of its word trademark, as shown below.



18.     Upon information and belief, aside from some "natural" varieties of peanut butter, no other major peanut butter manufacturer offers a No Added Sugar variety.  With the growing popularity of the "keto" diet and concern over the amount of sugar in the typical American diet, Smucker saw an opportunity to launch JIF No Added Sugar.

19.     In choosing packaging that would differentiate JIF No Added Sugar from other JIF varieties, Smucker chose the color light blue, specifically Pantone Matching Scale ("PMS") number 2925 C:



Color values:

| | |
|---|---|
| RGB | 0  156  222 |
| HEX/HTML | 009CDE |
| CMYK | 75  18  0  0 |

*See* https://www.pantone.com/color-finder/2925-C

20.     The primary considerations driving Smucker's choice of PMS 2925 C were the existing consumer association between the color blue and sugar claims on food products, the desire to leverage a lid already utilized by Smucker's peanut butter manufacturing facilities for a

JIF product marketed in Canada, and the goal of helping consumers differentiate the product from other varieties of JIF peanut butter on the shelf.

21.     In the food industry, including the market for peanut butter, manufacturers often use the color blue on either the packaging or an informational banner to identify the product as reduced sugar, as shown below:



22.     Smucker has used blue labels and blue on the caps for its Sugar Free fruit spreads and ice cream toppings for years, as shown below.





23.     Manufacturers in the nut-based spread market use many different shades of teal and light blue that peacefully coexist , as shown below.

  

  

   

24. Since at least February 2019, another major peanut butter manufacturer, Conagra, has sold a creamy whipped style of peanut butter with 1/3 less sugar under its well-known PETER PAN trademark in light blue packaging, as shown below.



25.     As the #3 most popular brand of peanut butter, PETER PAN is directly on the heels of #2 SKIPPY.

26.     Despite this, upon information and belief, Hormel has not challenged Conagra's use of light blue on the label and lid of its 1/3 less sugar whipped creamy style of PETER PAN peanut butter nor could it, because like the instant case, there is no likelihood of consumer confusion.

### Smucker's Preparation to Launch JIF No Added Sugar

27.     Smucker's creative marketing of the JIF brand has received widespread, positive media attention during the past year.  ADWEEK recognized Smucker's "That Jif'ing Good" *Bunker* theatrical-style ad as one of the top 25 ads of 2019.  Smucker's release of limited edition of GIF/JIF labeled peanut butter went viral in February 2020 as it cleverly tapped into the long-standing debate over the proper pronunciation of the .gif file extension.  *See* Feb. 25, 2020 FAST COMPANY, *Jif Trolls the World by Rebranding as Gif with a Hard G*, available at https://www.fastcompany.com/90466800/jif-trolls-the-world-by-rebranding-as-gif-with-a-hard-g.

28.     Smucker had planned to capitalize on this brand momentum and positive media association by launching JIF No Added Sugar in FY21.

29.     During a February17-21, 2020 conference, Smucker announced to the consumer products industry its planned launch JIF No Added Sugar in fiscal year 2021, releasing the following graphic.



30.     In early March, in preparation for a June launch, Smucker produced around 10,000 cases of JIF No Added Sugar in 15.5oz and 33.5oz sizes.

**Hormel's Baseless Assertions of Infringement**

31.     On March 17, 2020, Hormel's in-house counsel sent a letter by email to Smucker's Ohio-based Director and Managing Counsel for Trademarks claiming to own "teal in the ray design on the labels" of SKIPPY peanut butter and expressing concern over Smucker's planned launch of JIF No Added Sugar based on the above graphic.  A true and correct copy of the letter is attached hereto as **Exhibit 1**.

32.     Smucker responded to Hormel on April 3, 2020, explaining that Smucker's use of light blue (not teal) was consistent with industry use of a broad collection of shades of blue on peanut butter and other nut butters and that Smucker had chosen light blue in part to capitalize on the association between light blue and products that made claims about reduced or no sugar.  A true and correct copy of the email is attached hereto as **Exhibit 2**.

33.     Smucker has no need or desire to copy any aspect of the SKIPPY packaging because the JIF brand has been – by far – the most popular peanut butter brand in America for decades.

34.     At the time Smucker adopted PMS 2925 C for JIF No Added Sugar peanut butter, Hormel made no public claims to exclusive ownership of the color teal in connection with nut-based spreads and teal was just one of the many colors used by Hormel on SKIPPY lids and labels.

35.     Like most peanut butter manufacturers, Hormel uses a variety of colored lids to sell its SKIPPY peanut butter, and the red lettering of SKIPPY on a white background are the only consistent color elements across the brand.

36.     Teal, a bluish green used by Hormel to designate certain varieties of its creamy style peanut butter, is one of many colors used by Hormel to distinguish between the styles and varieties of SKIPPY peanut butter.

37.     Hormel uses color to identify different styles and varieties of its SKIPPY peanut butter as shown below.



38.     As shown above, the color teal does not appear anywhere on Hormel's SKIPPY® ROASTED HONEY NUT™ Creamy Peanut Butter, which features an orange lid and two shades

of orange in its ray design.  Nor does the color teal appear anywhere on SKIPPY® SUPER

CHUNK® Peanut Butter, which features a royal blue lid and two shades of blue in its ray design.

39.     On its SKIPPY NATURAL line of products, shown below, Hormel uses a brown

lid to identify the product as "natural."  The ray design features two shades of tan, except for the

honey-flavored variety which features an orange and gold ray design.  The two creamy style

varieties use only a small teal banner with the word "creamy" and a teal border around the

SKIPPY stylized logo.  The chunky style variety uses a royal blue banner and a royal blue border

around the SKIPPY stylized logo and does not feature the teal color at all.



40.     Consumers are readily able to determine the source of Hormel's peanut butter

products that do not feature the color teal by looking to the house mark SKIPPY.

41.     Recently, Hormel updated its website with a teaser banner indicating that it

intends to launch a new Skippy peanut butter variety in June.



42.     Given Smucker's superior market position and brand momentum in the media, it is highly likely, and upon information and belief Hormel believed, that any nationwide launch by Smucker of JIF No Added Sugar in the next several months would eclipse Hormel's June announcement.

43.     Hormel cannot reasonably believe that Smucker's use of a PMS 2925 C colored lid and/or label on No Added Sugar JIF creates a likelihood of confusion.

44.     The parties' two colors are readily distinguishable by consumers who encounter the products.  Upon information and belief, Hormel's teal is a dark greenish shad in a different color family and readily contrasts with Smucker's light blue PMS 2925 C.

45.     SKIPPY and JIF products are typically clustered with other varieties of (respectively) SKIPPY and JIF peanut butters on well-lit grocery shelves.  By displaying multiple styles (e.g., creamy and crunchy) of each brand together, by brand, the presentation is dominated by the words and stylized designs of the labels, not lid colors.

46.     There is no reasonable likelihood of consumer confusion because the lid and label backgrounds for creamy style SKIPPY and JIF No Added Sugar are at best tertiary signifiers behind the parties' well-known word marks and readily distinguishable label designs.  The marks JIF and SKIPPY are both well-known house brands of peanut butter.  The label designs for JIF

- 13 -

and SKIPPY could not be more different.  JIF utilizes its well-known JIF Color Banner design with the JIF name in white with black shadowing, the initial letter capitalized, and the remaining letters in small case.  The font itself is rounded, wide, tall, and bold.  By contrast, the word SKIPPY is in red all caps with a narrow font, and the letters, the rectangle the letters appear on, and the ray design behind it are all drawn in a way to make it look as though the words and design are retreating into the distance.

47.     The difference in color between SKIPPY creamy and JIF No Added Sugar is obvious to consumers shopping online:



48.     Hormel's teal creamy style SKIPPY is stocked by stores in close proximity to other peanut butters and nut butters that prominently use teal and turquoise in their packaging, as shown in the below photo of a grocery shelf in Stark County, Ohio on April 3, 2020 (the empty spaces show where the more popular JIF varieties were sold out during the early days of the pandemic).



49.     To meet unprecedented consumer demand triggered by the COVID-19 virus and emergency sheltering precautions enacted across the country, at the start of April 2020, Smucker began shipping the approximately 10,000 pre-launch cases, which were stocked in grocery stores located primarily in Michigan and Ohio.

50.     On April 9, 2020, Smucker received a letter from Hormel's outside counsel that failed to address the substantive issues raised in Smucker's April 3 email, shifted Hormel's alleged trade dress rights to the teal lid by itself, falsely accused Smucker of deliberately using the color teal to copy Hormel's trade dress, and demanded that Smucker confirm that it had not yet launched JIF No Added Sugar.  A true and correct copy of the letter is attached hereto as **Exhibit 3**.

51.     Smucker responded to Hormel in an April 24, 2020 letter, correcting Hormel's reference to PMS 2925 C as "teal," demonstrating to Hormel that lid colors were used in a functional manner in the industry to identify varieties of peanut butter, and questioning how

consumers could be confused given the prominent use on the parties' respective products of the well-known SKIPPY trademark and the even better-known JIF trademark. A true and correct copy of the letter is attached hereto as **Exhibit 4**.

52. After nearly a month of silence, Hormel responded to Smucker's letter on May 19, 2020, again warning Smucker against launching its new JIF No Added Sugar. A true and correct copy of the letter is attached hereto as **Exhibit 5**.

53. Hormel's May 19, 2020 letter doubled down on the accusatory tones of its earlier letter, used distorted images of the parties' respective products to make the color appear more similar, demanded that Smucker respond within a handful of business days, and threatened that Smucker's nationwide launch of JIF No Added Sugar would constitute willful infringement of Hormel's alleged trade dress rights.

### The Hormel Trade Dress Applications

54. It appears that, instead of replying to Smucker's April 24, 2020 letter, Hormel first attempted to shore up its position by filing two new trademark applications with the United States Patent and Trademark Office ("USPTO") on April 30, 2020 (collectively, the "Hormel Applications").

55. Hormel's first application, U.S. Serial No. 88/893,662, claims "a light teal and dark teal ray pattern radiating outward with an irregular-shaped void obscuring a portion of the pattern, together with the color dark teal applied to the lid of the jar" as shown below:



56.     Hormel's second application, U.S. Serial No. 88/895,128, claims more broadly "the color teal as applied to the lid of the container" as shown below:



57.     Upon information and belief, Hormel filed the two overlapping applications because it knows that it will not be allowed to register the color teal or as it states inconsistently, a dark color teal, as applied to the container lid due to long-existing competing uses of shades of blue colors in the industry, lack of recognition of the color as a source identifier, Hormel's use of many colors other than teal (*e.g.*, royal blue, brown, orange) for the ray design and lids, and Hormel's use of the color teal in a functional manner to identify its creamy style of peanut butter from the other peanut butter varieties sold by Hormel.

58.     Upon information and belief, it will take the USPTO examiner a year or more to consider the Hormel Applications.

59.     If Hormel convinces the USPTO examiner to allow the Hormel Applications to register, Smucker would then be entitled to challenge the applications by filing a proceeding with the Trademark Trial and Appeal Board ("TTAB"), which could take at least another year or two.

60.     Between now and Smucker's opportunity to challenge the Hormel Applications before the TTAB, Smucker would exist in a state of uncertainty with respect to the scope of Hormel's alleged trade dress rights in and to the color teal.

61.     Smucker is in imminent danger of losing the momentum created by its pre-launch marketing activities if it delays the national launch of JIF No Added Sugar until after the USPTO and TTAB consider the Hormel Applications.

62.     Upon information and belief, Hormel is using its baseless claims that JIF No Added Sugar infringes Hormel's alleged trade dress rights to interfere with Smucker's plans to launch its new JIF No Added Sugar product nationwide not because Hormel sincerely fears consumer confusion, but because it fears that Smucker's nationwide launch of No Sugar JIF will take media attention and market momentum away from Hormel's new SKIPPY product launch in June.

63.     Smucker is entitled to launch its JIF No Added Sugar with PMS 2925 C packaging without the cloud of Hormel's baseless accusations and its implicit threat to interfere with the launch through the filing of a lawsuit that would quickly shift Smucker's positive momentum in the media into the defensive posture of an (unjustly) accused trademark infringer.

64.     Smucker has not experienced any actual consumer confusion over its JIF No Added Sugar; nor does Hormel identify any actual consumer confusion with its SKIPPY products.

## Claim 1

### Declaration of No Trade Dress Rights

65.     Smucker reasserts and realleges all of the allegations contained in the foregoing paragraphs as though the same were fully set forth herein.

66.     Hormel has no enforceable trade dress rights in and to the color teal on peanut butter because consumers do not recognize the color as an independent signifier of the source of Hormel's peanut butter products for a number of reasons, including due to Hormel's use of multiple colors in a functional manner to identify the styles and varieties of peanut butter it sells.

67.     Hormel has threatened Smucker against launching its JIF No Added Sugar nationwide even though Hormel does not possess the trade dress rights it purports to enforce.

68.     As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

69.     Absent a declaration from the Court that the asserted trade dress is not protectable, Smucker will continue to suffer from Hormel's anticompetitive attempts to use baseless allegations of trade dress infringement to derail Smucker's imminent nationwide launch of JIF No Added Sugar.

## Claim 2

### Declaration of Non-Infringement

70.     Smucker reasserts and realleges all of the allegations contained in the foregoing paragraphs as though the same were fully set forth herein.

71.     There is no likelihood of confusion, mistake, or deception with respect to the origin of the parties' respective goods, or a likelihood that Smucker's use of PMS 2925 C will

confuse, mislead, or deceive members of the public into believing that Smucker's JIF products are in any way connected to or affiliated with Hormel's SKIPPY peanut butter products.

72.     As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

73.     Absent a declaration from the Court that Smucker's use of PMS 2925 C on JIF No Added Sugar does not infringe any trade dress rights owned by Hormel in the color teal, Smucker will continue to suffer from Hormel's anticompetitive attempts to use baseless allegations of trade dress infringement to derail Smucker's imminent nationwide launch of JIF No Added Sugar.

## Claim 3

### Tortious Interference with Prospective Economic Advantage under Ohio Common Law

74.     Smucker reasserts and realleges all of the allegations contained in the foregoing paragraphs as though the same were fully set forth herein.

75.     Hormel has no enforceable trade dress rights in and to the color teal on peanut butter because consumers do not recognize the color as an independent signifier of the source of Hormel's products, including due to Hormel's use of multiple colors in a functional manner to identify the styles and varieties of peanut butter it sells.

76.     There is no likelihood of confusion, mistake, or deception with respect to the origin of the parties' respective goods, or that Smucker's use of PMS 2925 C will confuse, mislead, or deceive members of the public into believing that Smucker's JIF peanut butter products are in any way connected to or affiliated with Hormel's SKIPPY peanut butter products.

77.     No reasonable litigant would realistically expect to succeed in a trade dress infringement claim based on the facts available to Hormel.

78.     Upon information and belief, Hormel has leveraged baseless accusations of trade dress infringement to interfere with Smucker's nationwide launch of JIF No Added Sugar in an attempt to secure media attention for its own June product launch.

79.     Hormel has no legitimate justification for its baseless accusations of trade dress infringement.

80.     As a proximate and direct result of Hormel's baseless accusations of trade dress infringement, Hormel has impeded and/or is likely to impede Smucker's nationwide launch of JIF No Added Sugar.

81.     The actions of Hormel, if not enjoined, will continue.

82.     Smucker has suffered and continues to suffer damages in an amount to be proven at trial consisting of, among other things, the threatened diminution in the value of and goodwill associated with the JIF mark, loss of marketing momentum and investment, and other injury to Smucker's business.

83.     On information and belief, Hormel's actions described above were and continue to be deliberate and malicious.

**Claim 4**

**Common Law Unfair Competition**

84.     Smucker reasserts and realleges all of the allegations contained in the foregoing paragraphs as though the same were fully set forth herein.

85.     Hormel has no enforceable trade dress rights in and to the color teal on peanut butter because consumers do not recognize the color as an independent signifier of the source of

Hormel's products, including due to Hormel's use of multiple colors in a functional manner to identify the styles and varieties of peanut butter it sells.

86.     There is no likelihood of confusion, mistake, or deception with respect to the origin of the parties' respective goods, or that Smucker's use of PMS 2925 C will confuse, mislead, or deceive members of the public into believing that Smucker's JIF peanut butter products are in any way connected to or affiliated with Hormel's SKIPPY peanut butter products.

87.     Upon information and belief, Hormel has leveraged baseless accusations of trade dress infringement to interfere with Smucker's nationwide launch of JIF No Added Sugar in an attempt to secure media attention for its own June product launch.

88.     Hormel has no legitimate justification for its baseless accusations of trade dress infringement.

89.     As a proximate and direct result of Hormel's baseless accusations of trade dress infringement, Hormel has impeded and/or is likely to impede Smucker's nationwide launch of JIF No Added Sugar.

90.     The actions of Hormel, if not enjoined, will continue.

91.     Smucker has suffered and continues to suffer damages in an amount to be proven at trial consisting of, among other things, the threatened diminution in the value of and goodwill associated with the JIF mark, loss of marketing momentum and investment, and other injury to Smucker's business.

92.     On information and belief, Hormel's actions described above were and continue to be deliberate and malicious.

WHEREFORE, Smucker hereby prays that the Court enter judgment against Defendant Hormel as follows:

a.  That the Court enter a declaration that Defendant Hormel does not own the broad trade dress rights in the color blue, teal or dark teal it has attempted to assert against Smucker;

b.  That the Court enter a declaration that there is no likelihood of confusion, mistake, or deception with respect to the origin of the parties' respective goods, or that Smucker's use of PMS 2925 C will confuse, mislead, or deceive members of the public into believing that Smucker's JIF peanut butter products are in any way connected to or affiliated with Defendant Hormel's SKIPPY peanut butter products;

c.  That Defendant Hormel be adjudged to have tortiously interfered with Smucker's prospective business relationships under Ohio common law;

d.  That Defendant Hormel be adjudged to have unfairly competed with Smucker;

e.  That Smucker be awarded damages in an amount sufficient to compensate it for the damage caused by Defendant Hormel's tortious interference and unfair competition;

f.  That Smucker be granted punitive damages for Defendant Hormel's malicious acts;

g.  That Smucker be granted pre-judgment and post-judgment interest;

h.  That Smucker be granted costs associated with the prosecution of this action; and

i.  That Smucker be granted such further relief as the Court may deem just.

## JURY TRIAL DEMANDED

Plaintiff Smucker hereby demands a trial by jury on all triable issues of fact.

Dated: May 26, 2020

Respectfully submitted,

*/s/Christina J. Moser*
Deborah A. Wilcox (0038770)
Email:   dwilcox@bakerlaw.com
Christina J. Moser (0074817)
Email:   cmoser@bakerlaw.com
BAKER & HOSTETLER LLP
Key Tower
127 Public Square, Suite 2000
Cleveland, OH  44114-1214
Telephone:   216.621.0200
Facsimile:    216.696.0740

Attorneys for Plaintiff
The J. M. Smucker Company