# Exhibit 3



April 9, 2020

**VIA EMAIL (<courtni.moorman@jmsmucker.com>)**

Ms. Courtni Moorman
Director & Managing Counsel
**The J.M. Smucker Company**
1 Strawberry Lane
Orrville, OH 44667-0280

Dear Ms. Moorman:

We write to you on behalf of our client Hormel Foods Corporation ("Hormel"). As you know, Hormel owns various intellectual property rights in connection with its SKIPPY® brand of peanut butter products, including common law teal trade dress protection in peanut-based products which directly compete with Smucker products in the marketplace.

Trade dress protection protects the look and feel of product packaging and any distinctive elements which consumers use to distinguish one product from another in the marketplace. United States trademark laws provide trade dress owners the right to prevent others from using similar packaging elements in a manner likely to cause deception, confusion or mistake among the public as to the source of the associated products.

As you know, trade dress specifically includes the distinctive color of packaging in which a product is sold, and these rights are protectible with or without a registration. See *Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 211-12, 54 USPQ2d 1065, 1068 (2000); *Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 34 USPQ2d 1161 (1995)(color alone may be protectible). In fact, Smucker has been very aggressive in protecting colors used on its own product packaging, as evidenced by U.S. Registration Numbers 2822446, 5877824, 5877831 and 5877832. As a result, Smucker clearly understands and appreciates the power of color as a branding tool and the importance of protecting colors consumers have come to associate with a specific brand of products. In a recent Response filed in connection with Reg. No. 5877831, Smucker successfully argued the consistent use of color and color carriers on peanut-based products for a period of decades throughout the United States in "supermarket and grocery store chains, many minor or local grocery store chains and some of the most heavily-trafficked retail chains in the United States" is more than sufficient to establish protectible rights in packaging colors. April 25, 2019 Office Action Response

Since the 1980s, SKIPPY® peanut-based products have featured consistent teal trade dress and have been sold in all of the same supermarket, grocery and heavily-trafficked retail channels where Smucker products have been sold. Hormel adopted its distinctive trade dress because no marketplace competitor was prominently using a similar color, and the color was easily distinguishable from the prominent use of the color red by the other major peanut butter brands, such as SUPERMAN®, PETER PAN® and JIF®.

April 9, 2020
Page 2



In addition to this prominent use of the color teal on its various product packaging, Hormel heavily leverages teal as the signature color for its SKIPPY® brand in promotional materials, corporate communications, trade shows, and related business efforts.





April 9, 2020
Page 3

After over 30 years of this consistent use in commerce, consumers of peanut-based products have naturally come to associate the color teal with SKIPPY® products. As a major competitor of Hormel in the peanut product category, Smucker is well aware of this consumer association between SKIPPY® products and the color teal.

Hormel's teal trade dress, specifically the teal cap, is extremely distinctive as displayed on grocery shelves and allows consumers to easily differentiate SKIPPY® products from competing products.



As argued by Smucker in connection with registering its own color trade dress, the association between product and color is extremely powerful and heavily resonates with consumers of peanut butter products which travel in mass market retail channels. After so many decades of exclusive use, Consumers have been trained to reach for the peanut butter with the teal cap when they seek Hormel's product.

Unfortunately, rather than continuing to reinforce its own historic trade dress and allowing consumers to easily distinguish between SKIPPY® and JIF® products, Smucker has adopted a color scheme for its new product line which is indistinguishable from Hormel's teal trade dress and certain to inject confusion into the marketplace of peanut butter products. Smucker could choose from a nearly unlimited palette of colors to distinguish its products in the marketplace, including the colors historically associated with JIF® products. However, your company chose a color so similar to the SKIPPY® trade dress that we can only assume Smucker specifically intended to sow seeds of confusion in the marketplace of peanut butter products.

April 9, 2020
Page 4



We note your recent email response cited a series of obscure brands which use the color light blue in nut spread categories to justify Smucker's use of teal, however, none of those products represented a legitimate competitor, would be featured on mass-market shelves next to SKIPPY® products, and/or feature such a distinctive teal lid. As a result, these examples are not relevant to the current matter and in no way justify your company's adoption of infringing trade dress.

Hormel views this matter with the utmost seriousness. We must therefore demand Smucker take immediate steps to change the color of this product line, cease all prominent use of the color teal, and refrain from use of any similar colors in the future.

To amicably resolve this matter, please contact me by **April 17, 2020** to agree to the above demands and confirm that no teal JIF® products are currently in the stream of commerce.

This letter is written without prejudice to all rights, claims, demands and remedies which our client may have, which are hereby specifically reserved.

Sincerely,

John Pickerill
*Attorney*
**Direct Dial:** 612.492.7306
**Email:** jpickerill@fredlaw.com


cc: Sarah Nelsen, Hormel Food Corporation