# Exhibit 4

Case: 5:20-cv-01132-SL Doc #: 1-4 Filed: 05/26/20 1 of 5. PageID #: 38

# BakerHostetler

Baker&Hostetler LLP

Key Tower
127 Public Square, Suite 2000
Cleveland, OH 44114-1214

T 216.621.0200
F 216.696.0740
www.bakerlaw.com

Christina J. Moser
direct dial: 216.861.7818
cmoser@bakerlaw.com

April 24, 2020

**VIA E-MAIL (JPICKERILL@FREDLAW.COM)**

John Pickerill
Fredrikson & Byron, P.A.
200 South Sixth Street, Suite 4000
Minneapolis, Minnesota 55402-1425

Re: *Alleged SKIPPY Blue Trade Dress*

Dear Mr. Pickerill:

Our client The J. M. Smucker Company ("Smucker") has asked us to respond to your April 9, 2020 letter asserting that Hormel Foods Corporation ("Hormel") owns broad trademark rights in and to the color blue for peanut butter.

We first note that you have not identified what color, exactly, Hormel is claiming. You have not acknowledged Ms. Moorman's explanation that Smucker is using a *light blue* color for the lid and label background of its new No Added Sugar JIF product – *not teal*. Your letter consistently refers to Hormel's alleged trade dress as consisting of the color *teal*. Smucker's and Hormel's respective colors are entirely different hues: teal is actually a greenish blue, versus Smucker's light blue. These are non-trivial differences.[1] Hormel's analyses appear to hinge on this fundamental factual error.

Smucker chose the light blue (<u>not</u> teal) lid for practical reasons completely unrelated to SKIPPY. Smucker chose the light blue color to signify the reduced sugar nature of the spread. Use of the color blue in connection with reduced sugar products is hardly unique in the food industry, including peanut butter products, as illustrated below.



---

[1] *See It's a New 10, LLC v. Harmon Stores, Inc.*, No. 17-CV-4231 (JPO) (S.D.N.Y. July 28, 2017) (navy and lighter royal blue "differ in a non-trivial way.").

*Atlanta     Chicago     Cincinnati     Cleveland     Columbus     Costa Mesa     Dallas     Denver     Houston*
*Los Angeles     New York     Orlando     Philadelphia     San Francisco     Seattle     Washington, DC*

April 24, 2020
Page 2

No Sugar Added JIF is a specialized product that will appeal to a narrower swath of the peanut-butter buying public who pay close attention to the nutritional content of the products they are purchasing. These highly-informed consumers read labels and know the brand of peanut butter they are purchasing.[2]

Furthermore, these very different products must be considered in light of the extensive uses by many companies of various hues and shades of the color blue for nut-based spreads. Consumers are used to distinguishing among the products. This is especially true for consumers viewing products on well-lit grocery shelves who are highly unlikely to confuse products for each other.

Your dismissal of third-party brands using various shades of blue as "obscure" brands that would not be featured on mass-market shelves next to SKIPPY® products is not grounded in reality. For instance, in this photo from Giant Eagle in Stark County, Ohio taken on April 3, 2020, the turquoise-labeled CRAZY RICHARD'S nut butter is shelved adjacent to SKIPPY brand peanut butter:



---

[2] *See Worthington Foods, Inc. v. Kellogg Co.*, 732 F.Supp. 1417, 1448 (S.D.Ohio 1990) (a "heightened awareness of health and healthy foods raises the standard of care which the reasonable purchaser of the parties' products would exercise.").

April 24, 2020
Page 3

Crazy Richard's is also in stock locally at Walmart.  RX nut butter and Target's Good & Gather brand nut butter products both feature light blue labels and are available on shelves at Target's retail stores.  Given the extensive use of the color blue on peanut butter packaging in all of the same supermarket, grocery and heavily-trafficked retail channels where SKIPPY and JIF products are sold, Hormel cannot credibly claim exclusive ownership of this single color – in all its shades and hues – for peanut butter.

The photo above also highlights another key fallacy of Hormel's argument – Hormel does not, in fact, use predominantly teal packaging for *all* of its SKIPPY peanut butter products.  Instead, it employs a variety of predominant colors, including royal blue, orange, and brown.  Indeed, it appears that the SKIPPY and JIF brands have been using similar shades of blue and brown lids for their respective crunchy and natural peanut butter offerings without issue for some time now.

The analyses by Hormel also ignore that the lid color is, at best, a tertiary signifier with respect to peanut butter.  In practice, lid colors are used more to identify the type of peanut butter spread, *i.e.*, crunchy (royal blue), natural (brown), reduced fat (green), *etc*.  Hormel's assumption that consumers will reach for any jar of peanut butter with a blue lid thinking that it is SKIPPY brand peanut butter is undermined by SKIPPY's own functional use of royal blue, brown, and orange lids – which colors are hardly unique to SKIPPY.

By isolating the color of the lid from the rest of the brand identifiers on the products, Hormel's analyses also commit the "cardinal sin" of ignoring the total commercial impression made by the products.[3]  When properly viewed as a consumer will view the products, there is zero likelihood of consumers confusing creamy SKIPPY with Smucker's No Sugar Added JIF.  The marks JIF and SKIPPY are both well-known house brands of peanut butter.  The labels for JIF and SKIPPY could not be more different. JIF utilizes its well-known rectangular color banner design[4] with the initial letter in the word JIF capitalized and the remaining letters in small case, and the font itself is wide, tall, and bold.  By contrast, SKIPPY appears sketched in all caps with the font, the rectangle the font appears on, and the ray design behind it all drawn in a way to make it look as though the words and design are retreating into the distance.  Particularly given the role that strong consumer preferences play in the peanut butter market, consumers would not confuse a clearly-marked jar of JIF peanut butter for a clearly-marked jar of SKIPPY peanut butter, or vice versa.

---

[3] *See, e.g., Eyebobs, LLC v. Snap, Inc.*, 259 F.Supp. 3d 965, 975 (D. Minn. 2017); *Fun-Damental Too, Ltd. v. Gemmy Indus. Corp.*, 111 F.3d 993, 1003 (2d Cir.1997); *August Storck K.G. v. Nabisco, Inc.*, 59 F.3d 616, 618 (7th Cir. 1995); *Bristol-Myers Squibb Co. v. McNeil-P.P. C., Inc.*, 973 F.2d 1033, 1046 (2d Cir.1992) ("The presence and prominence of markings tending to dispel confusion as to the origin, sponsorship or approval of the goods in question is highly relevant to an inquiry concerning the similarity of the two dresses. When prominently displayed it can go far towards eliminating any possible confusion."); *Fisher Stoves, Inc. v. All Nighter Stove Works, Inc.*, 626 F.2d 193, 194-95 (1st Cir.1980) ("Each manufacturer displayed its name and logo prominently..., clearly identifying [the product's] origin[, so] ... there is hardly likelihood of confusion or palming off when the name of the manufacturer is clearly displayed." (internal citation omitted)); *Conopco, Inc. v. May Department Stores C*o., 46 F.3d 1556, 1568 (Fed.Cir.1994) (collecting supporting cases).

[4] Hormel's reliance on cherry-picked phrases from Smucker's prosecution of its JIF color banner trademark applications to support its claim for exclusive rights to a single color could not be more misplaced.

April 24, 2020
Page 4

We admit that we are surprised that Hormel has insisted on raising these issues during the midst of a world-wide pandemic in which there is an extraordinary demand for peanut butter as a pantry essential. We trust that the additional information provided in this letter satisfies Hormel's immediate concerns so that the parties can both devote their time and energy to the more important, pressing concerns of providing a safe and reliable supply of food during these unprecedented times.

Should you wish to discuss any of these issues further, please reach out to set up a call.

Sincerely,

Christina J. Moser
Partner


cc: Courtni Moorman, Esq.