# Exhibit 5



May 19, 2020


**VIA EMAIL & (CMOSER@BAKERLAW.COM)**

Ms. Christina Moser
Attorney
**Baker & Hostetler LLP**
Key Tower
127 Public Square
Suite 2000
Cleveland, OH 44114-1214

    Re:  SKIPPY Teal Trade Dress

Dear Ms. Moser:

We write in response to your letter dated April 24, 2020 regarding your client the J.M. Smucker Company ("Smucker"), and its adoption of light blue trade dress for its JIF brand of no sugar peanut butter.  As you know, our client Hormel Foods Corporation ("Hormel") has historically used the distinctive color teal as the dominant feature of its SKIPPY® trade dress in the marketplace of peanut-based products, and consumers have come to recognize the color teal as being synonymous with SKIPPY® products.

While we appreciate your client's careful review of this matter, the defenses in your letter were little more than a carefully stitched-together smokescreen of irrelevant factors designed to obscure what appears to be a purposeful and blatant attempt by Smucker to erode and exploit the strength of the SKIPPY® trade dress. The lack of merit and transparency of your client's actions were made extremely clear by the feigned moral indignation and sermonizing in your letter, suggesting impropriety in Hormel enforcing its rights during the current pandemic. On the contrary, consumers are more vulnerable than ever during such times, and governments worldwide are working feverishly to stem the tide of deception and corruption by unscrupulous companies attempting to exploit consumer fear and confusion with predatory tactics, such as leveraging the popular trade dress of a competitor to sow seeds confusion in the marketplace.

The factors cited in your letter to justify Smucker's adoption of highly similar trade dress are uncompelling and largely irrelevant.  The initial attempts to split hairs between light blue and teal contradict trade dress principles, which protect against "confusingly similar" colors and packaging.  Consumers conditioned to look for the teal lid and packaging in buying SKIPPY® products are not likely to engage in semantics and consult a color wheel when confronted with highly similar colors and trade dress elements in the grocery aisle.  Furthermore, it was very noticeable that Smucker failed to provide an actual comparison of its "light blue" color against the SKIPPY® "teal" color, despite arguments that the colors are "entirely different." Hormel's comparison of its own packaging against the proposed JIF light blue color indicates the colors are virtually indistinguishable.

May 19, 2020
Page 2



Furthermore, your arguments that the relevant purchasers of the products are "highly informed consumers" of health products completely ignores the facts at hand and the realities of the marketplace. Consumers of SKIPPY® products largely represent parents seeking out the same peanut butter with teal trade dress they enjoyed when they were kids via mass market peanut butter retail outlets. These consumers are not seeking specialty health products in specialty health channels of trade. As such, they are very likely to be confused by a reduced sugar product featuring highly similar trade dress being sold on the same grocery shelves as standard peanut butter. Such marketplace confusion would heavily damage the SKIPPY® brand, as unsuspecting parents and kids mistakenly eat a low sugar product when they are expecting the same SKIPPY® taste they've experienced in the past.

Your claim that Smucker's choice of light blue was driven by marketplace "low sugar" conventions also rings hollow. There are an endless number of products which do not feature the color light blue as an indicator of sugar content.

   

Furthermore, the examples you provided primarily featured the color dark blue, and none wrapped the entire product in the color light blue, instead featuring a clear but simple indication of sugar content.

Your client's claim that third party use of light blue packaging justifies its wholesale adoption of infringing trade dress is equally flawed. The fact you and your client failed to find a better example than CRAZY RICHARD'S nut butter speaks volumes about the strength and distinctiveness of the SKIPPY® trade dress in the peanut butter marketplace. Furthermore, the image from the Giant Eagle proves the easily

May 19, 2020
Page 3

recognizable nature of the SKIPPY® brand. Our client's teal trade dress visually jumps off the shelves, while none of the competing products bear much resemblance. However, if the JIF® No Sugar product is superimposed into the same retail environment, it is all but indistinguishable from the SKIPPY® products.



The poor quality of this example indicates it was very difficult to even find a store shelf which displayed both SKIPPY® peanut butter and another product featuring the color teal. If you had a better example, I trust you would have used it. The fact you were forced to resort to CRAZY RICHARD'S obscure nut butter product as the basis for justifying the actions of a major peanut butter competitor like JIF® clearly displays the absurdness of your client's position in this matter.

You also argued the mutual use of other colors, such as red, brown, orange, dark blue, etc. somehow justifies Smucker's use of a color that has been continuously, exclusively and distinctively used with SKIPPY® products. The fact other colors are commonly used has little bearing on use of a color peanut butter consumers have come to associate with the SKIPPY® brand. Moreover, your claims that lid colors are used to identify the type of peanut butter rather than a specific brand has no merit. Branding elements are dictated by consumer perception rather than self-serving pronouncements. After almost 40 years of associating teal packaging and a teal lid exclusively with SKIPPY® peanut butter, consumers clearly perceive our client's teal lid as a source identifier.

Perhaps most importantly, your attempts to dismiss the significance of color in the peanut butter marketplace directly contradict your client's actions and formal statements over the years, which evidence a clear understanding of the importance of color in driving brand preference. Smucker has long sought to protect its own color trade dress and reinforce the powerful association between product and color in the minds of peanut butter consumers. As a result, your arguments to the contrary appear disingenuous, at best.

May 19, 2020
Page 4

It is undeniable the teal SKIPPY® trade dress, specifically the teal cap, is extremely distinctive as displayed on grocery shelves and allows consumers to easily differentiate SKIPPY® products from competing products. Hormel's own consumer surveys consistently prove the strong connection between the color teal and SKIPPY® products in the minds of our client's consumers, as well as consumers of competing brands. After almost four decades, this trade dress has become one of Hormel's most valuable assets. As a result, we must again demand Smucker take immediate steps to change the color of this product line and refrain from injecting confusion into the marketplace of mass market peanut-based products.

It is our understanding that the infringing JIF® products are not yet in the marketplace and are currently in the development phase. As a result, it should be relatively easy and cost-effective for your client to revise its packaging at this early stage.  If Smucker proceeds with introducing this infringing trade dress into the marketplace, its actions will most definitely be willful.

To amicably resolve this matter, please contact me by **May 26, 2020** to agree to the above demands and confirm Smucker will be revising the color of its no sugar product to avoid conflict with the well-established SKIPPY® trade dress.

This letter is written without prejudice to all rights, claims, demands and remedies which our client may have, which are hereby specifically reserved.

Sincerely,

*[signature: John Pickerill]*

John Pickerill
**Direct Dial:**  612.492.7306
**Email:**  jpickerill@fredlaw.com

cc:     Sarah Nelsen, Hormel Food Corporation

70099386 v1