UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| J.M. SMUCKER COMPANY, | ) | CASE NO. 5:20-cv-1132 |
| | ) | |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| HORMEL FOOD CORPORATION, | ) | |
| | ) | |
| | ) | |
| DEFENDANT. | ) | |

This matter is before the Court on defendant Hormel Food Corporation's ("Hormel" or "defendant") motion to dismiss (Doc. No. 13 ["Mot."]) the complaint (Doc. No. 1 ["Compl."]) of plaintiff J.M. Smucker Company ("Smucker" or "plaintiff"). Smucker opposed the motion (Doc. No. 14 ["Opp'n"]), to which Hormel replied (Doc. No. 15 ["Reply"]).

For the reasons that follow, Hormel's motion is granted.

## I.      Background

Smucker brings this action under the Lanham Act, 15 U.S.C. § 1052 *et seq*., and the Court has jurisdiction over this matter under 28 U.S.C. §§ 1331, 1332, 1338(a), 2201–2202, and 1367. (Compl. ¶ 8.) The following is a summary of the facts as alleged in Smucker's complaint.

Smucker is an American food manufacturer, incorporated in Ohio, whose products include JIF peanut butter. Smucker's principal place of business is Orville, Ohio. (Compl. ¶¶ 2,11.) Hormel is also a food manufacturer whose products include SKIPPY peanut butter. (*See id*. ¶¶ 35–37.) Hormel is a Delaware corporation with its principal place of business in Minnesota, and a sales office in Cincinnati, Ohio. (*Id.* ¶ 3.) In February 2020, Smucker announced plans to launch new

JIF products in June 2021, and released a graphic of Smucker's FY21 product launch. (*Id.* ¶¶ 29–30.) Smucker claims that it chose a light blue color (Pantone 2925C) for its JIF No Added Sugar product to distinguish it from other JIF products, because consumers associate the color blue with sugar content in food products, and because Smucker already utilizes a lid of that color for a JIF product in Canada. (*Id.* ¶¶ 19–21.)

On March 17, 2020, Hormel's in-house counsel emailed a letter to Smucker's counsel claiming to own "teal in the ray design on the labels" of SKIPPY peanut butter and expressing concern over Smucker's planned launch of JIF No Added Sugar with a blue lid. (*Id.* ¶ 31.) Smucker responded that Hormel made no public claim to the use of teal in connection with its SKIPPY peanut products, teal was just one of many colors Hormel used to distinguish different varieties of SKIPPY products, and consumers were not likely to confuse Smucker's new JIF product with a blue lid with SKIPPY products. (*Id.* ¶¶ 34–40, 43–44.) After an exchange of letters between March 2020 and May 2020 (*id.* ¶¶ 31, 32, 50–53), Hormel warned Smucker that a nationwide launch of JIF No Added Sugar with a blue lid would constitute willful infringement of Hormel's teal colored trade dress. (*Id.* ¶ 52.) The letters exchanged between Hormel and Smucker are attached to the complaint.[1]

In April 2020, Hormel filed two trademark applications with the United States Patent and Trademark Office ("USPTO") claiming use of the color teal in product packaging for SKIPPY peanut butter. (*Id.* ¶¶ 54–57.) Smucker claims that it will take years for these applications and

---

[1] "[D]ocuments attached to the pleadings become part of the pleadings and may be considered on a motion to dismiss." *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007) (citing Fed. R. Civ. P. 10(c)). "In addition, when a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment." *Id.* at 335–36 (citation omitted).

challenges thereto to work their way through the USPTO and, during that time, Smucker will be left in a state of uncertainty regarding its legal liability in connection with JIF No Added Sugar with a blue lid. (*See id*. ¶¶ 58–61.)

Smucker alleges that Hormel believed Smucker's product launch would "eclipse" Hormel's own new SKIPPY peanut butter product announcement planned for June 2021. Smucker contends that Hormel's new trademark applications and cease and desist letters claiming trademark infringement are designed to interfere with Smucker's JIF No Added Sugar product launch. (*Id*. ¶¶ 42, 58–64.)

Based on these factual allegations, Smucker asserts four claims for relief. First, Smucker seeks a declaration that Hormel has no enforceable trade dress rights in and to the color teal on peanut butter products. (*Id*. ¶¶ 65–69.) Second, Smucker seeks a declaration that Smucker's use of Pantone 2925C for its JIF No Added Sugar product does not infringe any trade dress right owned by Hormel in the color teal. (*Id.* ¶¶ 70–73.) Third, Hormel's claims of trade dress infringement constitute tortious interference with Smucker's prospective economic advantage. (*Id.* ¶¶ 74–83.) And fourth, Hormel's trade dress infringement claims constitute common law unfair competition. (*Id.* ¶¶ 84–92.)

In response, Hormel moves to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(2), 12(b)(3), and 12(b)(6). (Mot. at 93.) Defendant maintains that the entire complaint should be dismissed under Rule 12(b)(2) for lack of personal jurisdiction and, in addition, claims 3 and 4 should be dismissed under Rule 12(b)(6) for failure to state a claim. (*Id*. at 106.)

3

And to the extent the Court lacks personal jurisdiction over Hormel in Ohio, Hormel maintains that the entire complaint should be dismissed for the additional reason of improper venue under Rule 12(b)(3). (*Id*. at 120.)

The Court begins with the threshold issue of personal jurisdiction. *See Friedman v. Estate of Presser*, 929 F.2d 1151, 1156 (6th Cir. 1991) (without personal jurisdiction over a defendant the court lacks jurisdiction to proceed on the merits of the case even if the court has subject matter jurisdiction).

## II.     Discussion

### A.  Hormel's Rule 12(b)(2) Motion

#### 1.  Standard of review

Federal Rule of Civil Procedure 12(b)(2) provides for dismissal of a defendant where the Court lacks personal jurisdiction over the defendant. Smucker bears the burden making a prima facie showing that this Court has personal jurisdiction over Hormel. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). In the face of a supported motion to dismiss, Smucker may not rest upon its pleadings, but must, by affidavit or otherwise, set forth specific evidence supporting personal jurisdiction of this Court over Hormel. *Id.*

To assert personal jurisdiction over a defendant, a federal court with subject matter jurisdiction pursuant to either 28 U.S.C. § 1331 or § 1332 must find that (1) defendant is amenable to service of process under the forum state's long-arm statute, and (2) the exercise of personal jurisdiction will not deny defendant due process. *See Theunissen*, 935 F.2d at 1459 (diversity); *Bird v. Parsons,* 289 F.3d 865, 871 (6th Cir. 2002) (federal question); *see also Chapman v. Lawson*, 89 F. Supp. 3d 959, 970 (S.D. Ohio 2015) ("Under Ohio law, personal jurisdiction over

4

non-resident defendants exists only if: (1) Ohio's long-arm statute confers jurisdiction, *and* (2) the requirements of the federal due process clause are met.") (emphasis in original) (citations omitted). Service under Ohio's long-arm statute is governed by Ohio Rev. Code § 2307.382(A). The due process inquiry requires determining "whether the facts of the case demonstrate that the non-resident defendant possesses such minimum contacts with the forum state that the exercise of jurisdiction would comport with 'traditional notions of fair play and substantial justice.'" *Theunissen*, 935 F.2d at 1459 (quoting *Int'l Shoe Co. v. State of Wash.*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945)). Even if a defendant's contact with the State of Ohio satisfies Ohio's long-arm statute, personal jurisdiction fails unless exercising jurisdiction over the defendant comports with traditional notions of fair play and substantial justice.

Personal jurisdiction exists in two forms: "general" or "specific." *Conti v. Pneumatic Prods. Corp.*, 977 F. 2d 978, 981 (6th Cir. 1992). General jurisdiction exists over a defendant when his "contacts with the forum state are of such a 'continuous and systematic' nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state." *Third Nat'l Bank in Nashville v. WEDGE Group Inc.*, 882 F.2d 1087, 1089 (6th Cir. 1989). Specific jurisdiction exists when a plaintiff's claims arise out of or relate to a defendant's contacts with the forum state, that is, there is a nexus between a defendant's contacts in the forum state and plaintiff's claim. *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 149 (6th Cir. 1997); *Conti*, 977 F.2d at 981.

In deciding Hormel's Rule 12(b)(2) motion the Court may, at its discretion, (1) decide the motion on affidavits alone, (2) permit discovery in aid of deciding the motion, or (3) conduct an evidentiary hearing to resolve any apparent factual questions. *Theunissen*, 935 F.2d at 1458;

5

*Burnshire Dev., LLC v. Cliffs Reduced Iron Corp.*, 198 F. App'x 425, 434 (6th Cir. 2006). Both sides submitted declarations in support of their respective positions regarding the Court's personal jurisdiction over Hormel.[2] With one exception, neither party has requested discovery[3] or a hearing with respect to Hormel's motion.

In this case, the parties dispute over personal jurisdiction centers more on the legal significance of Hormel's contacts with Ohio rather than a factual dispute as to the nature of those contacts.[4] Having reviewed the briefs and declarations attached thereto, the Court concludes that Hormel's Rule 12(b)(2) motion may be resolved on the parties' submissions and a hearing will not assist the Court. When the Court elects to decide the motion upon the written submissions, it must view the declarations, pleadings and related documentary evidence in the light most favorable to the plaintiff. *Bird,* 289 F.3d at 871. That said, the Court is not precluded from considering undisputed factual representations of the defendant that are consistent with the representations of the plaintiff. *Kerry Steel,* 106 F.3d at 153. Where a district court decides the issue solely on the basis of written materials and affidavits, "the burden on the plaintiff is relatively slight, . . . and the plaintiff must make only a *prima facie* showing that personal jurisdiction exists in order to

---

[2] In support of its motion, Hormel submits the declarations of Craig S. Drefcinski, Hormel's Director of Sales-Kroger in Cincinnati, Ohio (Doc. No. 13-2 ["Drefcinski Decl."] ¶ 2); Lora M. Friedemann, counsel for Hormel (Doc. No. 13-2 ["Friedemann Decl."] ¶ 1); Steven J. Venenga, Hormel's Vice President of Grocery Products Marketing (Doc. No. 13-4 ["Venenga Decl."] ¶ 2). In opposition, Smucker submits the declarations of Tina Floyd, Smucker's Senior Vice President and General Manager, Consumer Foods (Doc. No. 14-1 ["Floyd" Decl."] ¶ 1) and Christina J. Moser, counsel for Smucker (Doc. No. 14-2 ["Moser Decl."] ¶1).

[3] Smucker requests that "[i]f the Court were to rely on the generic, unexplained sales data provided by Hormel, then Smucker requests that it be allowed discovery directed to the full extent and significance of Hormel's business activities in the state." (Opp'n at 168 n.5 (underlining in original) (Page number references are to the page identification numbers generated by the Court's electronic filing system).)

[4] The parties do not disagree that Hormel has two distribution centers in Ohio, one of which has two Hormel employees on site. Nor do the parties disagree that Hormel has a sales office in Cincinnati with 35-40 employees whose primary function is to facilitate Hormel's business with Kroger, including Hormel'S SKIPPY products.

6

defeat dismissal[.]" *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.,* 503 F.3d 544, 549 (6th Cir. 2007) (internal quotation marks and citations omitted). A plaintiff can meet this burden by "establishing with reasonable particularity sufficient contacts between [the defendant] and the forum state to support jurisdiction." *Neogen Corp. v. Neo Gen Screening, Inc.,* 282 F.3d 883, 887 (6th Cir. 2002) (internal quotation marks and citation omitted). "Dismissal [is] only proper if all of the specific facts [plaintiff] alleged collectively fail[] to state a *prima facie* case for jurisdiction under the appropriate standards." *Theunissen*, 935 F.2d at 1459; *see also Kerry Steel,* 106 F.3d at 149.

### 2. Analysis

Defendant argues that the entire case should be dismissed pursuant to Rule 12(b)(2) because this Court lacks both general and specific personal jurisdiction over Hormel. (Mot. at 107–15.) Smucker argues that this Court has specific personal jurisdiction over Hormel based upon the three cease and desist letters Hormel sent Smucker claiming that Smucker's use of Pantone 2925C on its new peanut butter product infringes Hormel's SKIPPY teal colored trade dress.[5] (Opp'n at 161–70.)

The Sixth Circuit has established a three-part test for determining whether the due process component of personal jurisdiction is satisfied in the context of specific jurisdiction. First, the defendant must purposefully avail itself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from defendant's activities there. Finally, defendant's activities or the consequences thereof must have a substantial enough

---

[5] In opposing Hormel's Rule 12(b)(2) motion, Smucker does not address or argue the issue of general jurisdiction. Having waived that issue, the Court will limit its analysis to the parties' arguments concerning specific jurisdiction.

connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.[6] *S. Machine Co. v. Mohasco Indus., Inc.,* 401 F.2d 374, 381 (6th Cir. 1968). Unlike general jurisdiction, specific jurisdiction exists only when the cause of action "arise[s] out of or [is] related to the defendant's contacts with the forum[.]" *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 n.8, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984). Smucker must establish specific personal jurisdiction over Hormel for each cause of action. *See J.M. Smucker Co. v. Promotion in Motion, Inc.*, 420 F. Supp. 3d 646, 655–56 (N.D. Ohio 2019) (citing *SunCoke Energy, Inc. v. MAN Ferrostaal Aktiengesellschaft*, 563 F.3d 211, 219 (6th Cir. 2009)).

### *Claims 1 and 2 for declaratory judgment*

In claims 1 and 2, Smucker seeks a declaration that Hormel has no enforceable trade dress rights in the color teal (claim 1) and that Smucker's use of Pantone 2925C on its JIF No Added Sugar product does not infringe any trade dress rights owned by Hormel in the color teal (claim 2). (Compl. ¶¶ 65–73.)

Hormel argues that its cease and desist letters are insufficient to support specific jurisdiction in Ohio, citing among authorities a recent case from the Northern District of Ohio similar to the instant action—*J.M. Smucker Co.*, 420 F. Supp. 3d 646 (N.D. Ohio 2019).[7] In that

---

[6] The Federal Circuit uses a virtually identical three-part test to analyze the constitutional limits on specific jurisdiction. *See HealthSpot, Inc. v. Computerized Screening, Inc.*, 66 F. Supp. 3d 962, 969 (N.D. Ohio 2014) ("The Federal Circuit uses a three part test to analyze constitutional limits on specific personal jurisdiction. First, the defendant must have purposefully directed its activities at residents of the forum. Second, the plaintiff's claims must arise from or relate to those activities. And third, the assertion of personal jurisdiction must be reasonable and fair under the circumstances.") (citing *AFTG–TG, LLC v. Nuvoton Tech. Corp.*, 689 F.3d 1358, 1361 (Fed. Cir. 2012) (citation omitted)).

[7] In *J.M. Smucker Co.*, defendant Promotion in Motion, Inc. ("PIM"), a Delaware corporation with its principal place of business in New Jersey, sent a cease and desist letter to Smucker stating that Smucker's use of "Fruit is our 1st Ingredient" on its Natural Fruit Spread product violates the Lanham Act with respect to PIM's use of the tagline "Fruit is our 1st Ingredient" on its Welch's Fruit Snack product. *J.M. Smucker Co.*, 420 F. Supp. 3d at 650–52. Smucker sued seeking a declaration that use of the phrase "Fruit is our 1st Ingredient" did not infringe on PIM's rights and claims for trademark infringement and unfair competition. (*Id.* at 650.)

case, the court found that cease and desist letters sent by defendant to Smucker in Ohio regarding Smucker's alleged infringement of defendant's trademark, in the absence of other trademark enforcement activity by defendant in the State of Ohio, was insufficient to support specific personal jurisdiction with respect to J.M. Smucker's declaratory judgment claim. *See J.M. Smucker Co.*, 420 F. Supp. 3d at 658.

Unlike general jurisdiction, specific jurisdiction requires that plaintiff's cause of action arise from defendant's contacts with the forum state. *Mohasco Indus.*, 401 F.2d at 381 (the cause of action must arise from defendant's activities in the state). Smucker's declaratory judgment claims seek to "clear the air of infringement charges" resulting from Hormel's enforcement of its alleged intellectual property rights, and Smucker's injury with respect to those claims is the threat communicated by Hormel's cease and desist letters. *See J.M. Smucker Co.*, 420 F. Supp. 3d at 656–57 (quoting *Avocent Huntsville Corp. v. Aten Int'l Co., Ltd.*, 552 F.3d at 1332–33).[8] Thus, declaratory judgment claims do not arise from infringement or unfair competition activities, but from the activity of the defendant enforcing its alleged intellectual property rights. *Avocent Huntsville Corp.*, 552 F.3d at 1333. Therefore, the relevant inquiry for specific personal jurisdiction with respect to a declaratory judgment claim is "'to what extent has the defendant [ ] purposefully directed . . . *enforcement activities* at residents of the forum, and the extent to which the declaratory judgment claim arises out of or relates to those activities.'" *J.M. Smucker Co.*, 420 F. Supp. 3d at 658 (quoting *Avocent Huntsville Corp.*, 552 F.3d at 1332-1333) (emphasis added).

---

[8]   Although *Avocent Huntsville Corp.* addressed a request for declaratory relief concerning non-infringement and invalidity of patents, numerous courts have held that the reasoning in that case applies equally to suits seeking a declaration of non-infringement of other intellectual property rights, such as copyrights and trademarks. *See J.M. Smucker Co.,* 420 F. Supp. 3d at 657 (collecting cases).

The mere sending of cease and desist letters is insufficient to give rise to personal jurisdiction. *HealthSpot, Inc. v. Computerized Screening, Inc.*, 66 F. Supp. 3d 962, 969 (N.D. Ohio 2014) (citing *Red Wing Shoe Co. v. Hockerson–Halberstadt, Inc.,* 148 F.3d 1355, 1360–61 (Fed. Cir. 1998)). This is so because even though cease-and-desist letters alone are substantially related to declaratory judgment claims, such minimum contacts are not sufficient to satisfy the concepts of fair play and substantial justice necessary to render the exercise of personal jurisdiction over a non-resident defendant reasonable. The owner of intellectual property rights "should not subject itself to personal jurisdiction in a forum solely by informing a party who happens to be located there of suspected infringement. Grounding personal jurisdiction on such contacts alone would not comport with principles of fairness." *Red Wing Shoe,* 148 F.3d at 1360–61 (citing *Asahi Metal Indus. Co. v. Superior Ct. of Cal.,* 480 U.S. 102, 121–22, 107 S. Ct. 1026, 94 L. Ed. 2d 92 (1987) (Stevens, J., concurring in judgment)).

But actions that go beyond merely sending cease and desist letters may support specific personal jurisdiction, such as judicial or extra-judicial enforcement activities within the forum, entering into an exclusive license agreement, or another undertaking imposing enforcement obligations on a party residing or regularly doing business in the forum. *J.M. Smucker Co*., 420 F. Supp. 3d at 657 (citing *Avocent Huntsville Corp.,* 552 F.3d at 1334); *see also HealthSpot, Inc.,* 66 F. Supp. 3d at 970 (other extra-judicial enforcement activities in the forum state which may give rise to specific personal jurisdiction over declaratory judgment claim include hiring a forum-state attorney to contact the declaratory judgment plaintiff, defendant representatives attending a demonstration in the forum state of the allegedly infringing product, and asking a convention

manager in the forum state to close plaintiff's booth on infringement grounds, all of which go beyond simply informing plaintiff of defendant's allegations of infringement) (citations omitted).

Indeed, Smucker concedes that "courts frequently concluded that it is not reasonable to exercise jurisdiction over a defendant who sent a good faith cease and desist letter seeking to enforce intellectual property rights that otherwise have no connection to the state." (Opp'n at 164-65.) But plaintiff distinguishes the instant action from the *J.M. Smucker Co*. case in two ways. First, plaintiff argues that, unlike *J.M. Smucker Co*., Hormel's cease and desist letters were sent in bad faith and the safe-harbor provision of *Red Wing Shoe* applies only to good faith enforcement efforts. (*Id*. at 166 n.2, 167.) In support, Smucker points to *HealthSpot, Inc*. (*Id*. at 167.) In *HealthSpot, Inc*. the court found that defendant's activities beyond the cease and desist letters "expressed an intent to interfere with Plaintiff HealthSpot's attempts to raise capital as a startup. Moreover, by repeatedly threatening to sue on particular dates and then not following through, CSI subjected HealthSpot to precisely the sort of infringement charges that might 'restrain the exploitation of non-infringing goods' and that declaratory judgments are designed to 'clear the air' of." *HealthSpot, Inc*., 66 F. Supp. 3d at 971. But Smucker does not identify any extra-judicial activity by Hormel—beyond the cease and desist letters—to indicate Hormel was asserting objectively baseless[9] sham allegations of trade dress infringement and acting in bad faith.

Second, plaintiff argues that the court in *J.M. Smucker Co*. relied on a non-existent rule that cease and desist letters can never provide a basis for personal jurisdiction in a declaratory judgment action and other factors must be considered. (Opp'n at 165 and n.2. (citing *Jack Henry*

---

[9] In analyzing defendant's motion to dismiss Smucker's state law claim, *infra*, the Court finds that Hormel's trade dress infringement allegations are not objectively baseless.

& *Assoc., Inc. v. Plano Encryption Tech., Inc*., 910 F.3d 1199, 1206 (Fed. Cir. 2018).) But the

court in *J.M. Smucker Co*. did consider the presence of other activities by the defendant in Ohio

relating to enforcement of defendant's intellectual property rights and found none. *J.M. Smucker*

*Co*., 420 F. Supp. 3d at 658 ("There is no evidence of any kind of licensing or other agreement

between PIM and Smucker relating to the alleged trademark at issue, nor is there evidence that

PIM engaged in 'other activities' relating to the enforcement of its alleged trademark in Ohio, such

as the initiation of judicial or extra-judicial enforcement actions within this forum. Courts have

routinely found that the sending of cease and desist letters, standing alone, is insufficient to confer

jurisdiction over a declaratory judgment claim. Accordingly, the Court finds that Smucker has

failed to demonstrate that personal jurisdiction exists over PIM with respect to its Declaratory

Judgment claim because Smucker has failed to demonstrate purposeful availment under the first

prong of *Mohasco*.") (citing among authority *HealthSpot, Inc.*, 66 F. Supp. 3d at 970)).

To the extent that Smucker is arguing that Hormel's physical presence in Ohio constitutes

"other factors" that support a finding of specific personal jurisdiction based upon Hormel's cease

and desist letters, that argument is unavailing. Smucker makes much of Hormel's physical

presence in the State of Ohio, but neither Smucker nor Hormel contend that these contacts are

related to Smucker or to Hormel's enforcement of its alleged trademark/trade dress rights against

Smucker. Nor does Smucker dispute the affidavits advanced by Hormel to the contrary.[10] Hormel's

---

[10]  *See* Drefcinski Decl. ¶ 3 (Hormel's thirty-five employee Cincinnati office to facilitate business with Kroger "is not
involved in or responsible for strategic business decisions, marketing or advertising, brand management, or intellectual
property enforcement related to SKIPPY products."); *id.* ¶ 8 ("Neither myself, nor anyone else in the Cincinnati sales
office had any involvement in the cease and desist letters sent to Smucker in connection with this lawsuit. Neither
myself, nor anyone else in the Cincinnati sales office has contacted any Ohio person or business regarding the JIF No
Added Sugar or Skippy trade dress."); *see also* Venenga Decl. ¶¶ 4, 6 (Hormel's principal place of business and
corporate headquarters are located in Austin, Minnesota, and all "primary business activities and decision-making
regarding Hormel's brands and brand management, trademark rights, trade dress rights, intellectual property
protection and enforcement, product development, and product launches occur in Austin, Minnesota."); *id.* ¶¶ 9–11

two distribution centers in Ohio and sales activity in the Cincinnati office are not enforcement activities relevant to the inquiry of personal jurisdiction in the context of a declaratory judgment claim. *See J.M. Smucker Co.*, 420 F. Supp. 3d at 658 (sales and promotional activities are not relevant to the inquiry of to what extent defendant has directed enforcement activities to residents of the forum state and to what extent the declaratory judgment claims relate to those activities) (citing *Avocent Huntsville Corp.*, 552 F.3d at 1332–33); *see also HealthSpot*, 66 F.Supp.3d at 969 ("[N]either sales nor non-exclusive licenses can give rise to specific personal jurisdiction for declaratory judgment suits because they relate to the patent's commercialization rather than to its enforcement.") (citing *Avocent Huntsville Corp.*, 552 F.3d at 1335–36). Nor has Smucker identified or alleged any facts regarding Hormel's trademark/trade dress enforcement activities in Ohio—judicial, extra-judicial, or otherwise—beyond the cease and desist letters at issue here. The two affidavits submitted by Smucker in opposition to Hormel's motion are devoid of any averments concerning enforcement activity by Hormel in Ohio that, construed in a light most favorable to Smucker, provide even the slightest evidence that Hormel engaged in an any trade dress enforcement or enforcement-related activity in Ohio beyond the cease and desist letters attached to Smucker's complaint.[11]

---

(All decisions regarding SKIPPY are made in Austin, Minnesota, including intellectual property protection and enforcement. Hormel does not engage any Ohio marketing or advertising agencies and has never licensed SKIPPY trademark or trade dress.); *id.* ¶¶ 16–22 (The decision to send cease and desist letters to Smucker regarding SKIPPY trade dress was made by Hormel in Minnesota and a Hormel lawyer in Minnesota prepared the letter which was approved by Hormel employees in Minnesota and sent to Smucker on March 17, 2020. Hormel's outside counsel based in Minneapolis, with the approval of Hormel in Minnesota, sent Smucker a second letter on April 9, 2020. On May 19, 2020, a third letter was sent to Smucker regarding this dispute by Hormel's Minneapolis-based attorneys. Except for these letters, Hormel has not communicated to any Ohio-based person or business about Smucker's JIF No Added Sugar product, nor instituted any proceedings in Ohio concerning Smucker's product or the SKIPPY trade dress.).

[11] The first affidavit is that of Tina Floyd, Smucker's Senior Vice President and General Manager, Consumer Foods. (Floyd Decl. ¶ 1.) Floyd makes various averments regarding the parties' respective positions in the peanut butter market and that Hormel sells SKIPPY peanut butter in Kroger stores in Ohio. (*Id.* ¶¶ 2, 3.) Floyd avers that "[i]f

In the absence of any other judicial or extra-judicial activity by Hormel in Ohio related to the trade dress enforcement at issue here, Hormel's cease and desist letters to Smucker are insufficient to establish personal jurisdiction over Hormel as to Smucker's declaratory judgment claims. *See J.M. Smucker Co.*, 420 F. Supp. 3d at 657 (the exercise of personal jurisdiction must rest upon other activities directed at the forum and relating to enforcement besides the letters threatening an infringement suit ) (citing *Avocent Huntsville Corp*., 552 F.3d at 1333–34); *see also Power Sys., Inc. v. Hygienic Corp*., No. 3:13-cv-382, 2014 WL 2865811, at *6–8 (granting motion to dismiss for lack of personal jurisdiction where, even if Hygenic's sales activities in Tennessee may serve as evidence of purposeful availment, defendant's only relevant contact with Tennessee concerning enforcement activities were those directed at plaintiff and, in the absence of other judicial or extrajudicial enforcement activities directed by defendant at the forum state, finding personal jurisdiction on a cease and desist letter alone is inconsistent with the principles of fairness underlying personal jurisdiction); *Indus Trade & Tech., LLC v. Stone Mart Corp.*, No. 2:11-cv-637, 2011 WL 6256937, at *4–7 (S.D. Ohio Dec. 14, 2011) (cease and desist letters satisfy neither the purposeful availment nor arising under prongs of *Mohasco Indus.*) (collecting cases); *Ann Arbor T-Shirt Co., LLC v. Lifeguard Licensing Corp.*, No. 15-CV-13647, 2016 WL 1323784, at

---

Hormel actively monitors the peanut butter market, as it claims to do, I would be extremely surprised if it was not aware of ConAgra's use of a light blue jar and lid for PETER PAN whipped creamy peanut butter at or near the time the packaging debuted." (*Id.* ¶ 3.) Floyd also avers that Hormel announced its SKIPPY no added sugar and squeeze pack product in June 2020, which were the same product innovations announced by Smucker in February 2020. (*Id.* ¶ 5.) With respect to the declaration submitted by Smucker's counsel, Christina Moser, she avers that, attached to her declaration is a true and correct copy of: (1) an article regarding Skippy's new product line on foodbusinessnews.com dated June 3, 2020 (Moser Decl. ¶ 2); (2) an article from The Takeout titled "It's Skippy vs. Jif in the Battle of the Squeezable Peanut Butter Pouches" (*id.* ¶ 3); (3) a June 16, 2020 Office Action issued by the USPTO regarding application Serial No. 88/895,128 requiring Hormel to provide evidence that the color teal has acquired source-identifying significance in the mind of the consumer (*id.* ¶ 4; Doc. No. 14-5 at 200); and (4) an archived web page from ConAgra's website showing that PETER PAN creamy whipped peanut butter has been sold with a light blue label and lid at least as early as February 22, 2019 (*id.* ¶ 5).

14

*5 (E.D. Mich. Apr. 5, 2016) ("Even if the Court were to assume that [defendant's cease and desist letter sent by Lifeguard's counsel to plaintiff alleging trademark infringement] satisfied the first and second criteria of the *Mohasco Industries*' test, courts have uniformly held that such letters, alone, are insufficient 'to make the exercise of jurisdiction over the defendant reasonable.'") (collecting cases).

Accordingly, the Court finds that Smucker has failed to carry its slight burden to make a prima facie showing necessary to establish specific personal jurisdiction under *Mohasco Indus*. Hormel's Rule 12(b)(2) motion to dismiss is granted as to claims 1 and 2 of the complaint.

### Smucker's state law claims – Rule 12(b)(2)

In claims 3 and 4, Smucker asserts state law claims for tortious interference with prospective economic advantage and unfair competition, respectively. (Compl. ¶¶ 74–92.) Separate and apart from plaintiff's federal claims, Smucker asserts that this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 and the amount in controversy exceeds $75,000.00. (Compl. ¶¶ 8, 9.)

The analysis of the Court's specific personal jurisdiction over Hormel with respect to Smucker's state law claims is the same as discussed above and must be conducted on a claim by claim basis. That is, Hormel's contact with the state of Ohio must satisfy one of nine elements of Ohio's long-arm statute and must meet due process requirements by satisfying all three elements of *Mohasco Industries*.

Smucker's entire personal jurisdiction argument is grounded in the cease and desist letters Hormel sent to Smucker in Ohio. Smucker points out that the analysis of whether cease and desist letters are sufficient to establish personal jurisdiction in the context of a declaratory judgment

claim does not apply to its state law claims. (*See* Opp'n at 168 n.4.) That said, even assuming that claims 3 and 4 satisfy one or more of the nine bases for establishing personal jurisdiction under Ohio's long-arm statute, Smucker offers no analysis regarding how claims 3 and 4 satisfy each element of *Mohasco*, which must be met for each claim in order to satisfy the due process component of specific personal jurisdiction. Though its burden is light, Smucker has failed to establish that this Court has specific personal jurisdiction over Hormel with respect to claims 3 and 4, and the Court is not required to construct plaintiff's argument for it from the documents attached to the complaint or the briefing on Hormel's motion to dismiss. *See Kornblut v. Hudson City Sch. Dist. Bd. of Educ.*, No. 5:14-cv-1986, 2015 WL 5159082, at *8 n.22 (N.D. Ohio Sept. 2, 2015) (citing cases); *Heller v. Brown Mackie Coll.*, No. 5:14-cv-579, 2014 WL 5795566, at *4 (N.D. Ohio Nov. 6, 2014) (same) (citation omitted).

Smucker has failed to carry its slight burden to establish a prima facie case for this Court's exercise of specific personal jurisdiction over Hormel for claims 3 (tortious interference with prospective economic advantage) and 4 (unfair competition) based upon Hormel's cease and desist letters. Hormel's Rule 12(b)(2) motion to dismiss claims 3 and 4 is granted.

Even if Smucker had carried its burden to establish personal jurisdiction over Hormel as to claims 3 and 4, those claims would nevertheless be subject to dismissal pursuant to Hormel's Rule 12(b)(6) motion.

### B.  Hormel's Rule 12(b)(6) Motion

#### 1.  Standard of review

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) challenges the sufficiency of the complaint tested against the notice pleading requirements of Fed. R. Civ. P. 8(a)(2), which

provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Although this standard is liberal, Rule 8 still requires a complaint to provide the defendant with "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true," to state a plausible claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570); *see also Ryan v. Blackwell*, 979 F.3d 519, 524 (6th Cir. 2020) ("When determining whether [plaintiff's] complaint meets this standard 'we accept as true its factual allegations and draw all reasonable inferences in his favor, but we disregard any legal conclusions.'") (quoting *Rudd v. City of Norton Shores*, 977 F.3d 503, 511 (6th Cir. 2020)) (further citation omitted). "The pleading standard is generally construed quite liberally." *Ryan*, 979 F.3d at 524 (citing *Sam Han v. Univ. of Dayton*, 541 F. App'x 622, 625 (6th Cir. 2013)). But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

### 2. Analysis

Smucker's state law claims[12] are based upon Hormel's cease and desist letters. Hormel's primary argument for dismissal of those claims is that they are based upon protected trade dress

---

[12] Claim 3—tortious interference with prospective economic advantage—is grounded in Smucker's claim that "Hormel has leveraged baseless accusations of trade dress infringement to interfere with Smucker's nationwide [new product] launch and to secure media attention for its own June product launch." (Compl. ¶ 78.) Smucker alleges that Hormel "has no legitimate justification for its baseless accusations of trade dress infringement[,]" and that as a result of Hormel's baseless accusations, Smucker's new product launch will be impeded. (*Id*. ¶¶ 79, 80.) Claim 4—unfair competition—is grounded in Smucker's claim that "Hormel has no enforceable trade dress rights in the color teal on peanut butter" and has leveraged baseless accusations of trade dress infringement to interfere with Smucker's [new product] launch." (*Id*. ¶¶ 85, 87.) Smucker alleges that "Hormel has no legitimate justification for its baseless accusations of trade dress infringement[,] and as a "result of Hormel's baseless accusations of trade dress infringement," Hormel will impede Smucker's nationwide new product launch. (*Id*. ¶¶ 88, 89.)

enforcement activity. Smucker's primary allegation in the complaint, and primary argument against Hormel's motion to dismiss Smucker's state law claims, is that Hormel's cease and desist letters are objectively baseless sham allegations of trade dress infringement designed to interfere with Smucker's new products launch. Both sides cite the *Noerr-Pennington* doctrine and Ohio litigation privilege in support of their respective positions. (*See* Mot. at 118–19; Opp'n at 170; Reply at 215.)

### The Noerr-Pennington doctrine and Ohio litigation privilege

The *Noerr-Pennington* doctrine has its roots in antitrust law.[13] "Although the *Noerr–Pennington* doctrine was initially recognized in the antitrust field, the federal courts have by analogy applied it to claims brought under both state and federal laws, including common law claims of tortious interference." *Campbell v. PMI Food Equip. Grp., Inc.*, 509 F.3d 776, 790 (6th Cir. 2007) (collecting cases); *see also Restoration Hardware, Inc. v. Bungalow Home, LLC.*, No. 2:19-cv-4978, 2020 WL 4436357, at *3 (S.D. Ohio Aug. 3, 2020) ("Courts, including the Sixth Circuit, have extended the *Noerr-Pennington* doctrine to anti-competition claims in trademark cases, such that trademark owners are protected against anti-competition claims that arise from their use of legal proceedings to enforce their rights.") (citing *Campbell*, 509 F.3d at 790). The *Noerr-Pennington* doctrine was initially applied to protect parties from liability when using litigation to enforce their rights, and courts have also applied the doctrine to protect pre-litigation

---

[13] "Under the Petition Clause of the First Amendment to the U.S. Constitution, private actors have the right to petition the government for action. U.S. Const. amend. I ('Congress shall make no law . . . abridging . . . the right of the people . . . to petition the Government for a redress of grievances.'). Where private actors petition the government for action that would violate antitrust law, the Petition Clause immunizes the actors from litigation in connection with their petitioning. Under these circumstances, private immunization from alleged violations of the Sherman Act is known as the *Noerr–Pennington* doctrine. *See United Mine Workers of Am. v. Pennington*, 381 U.S. 657, 85 S. Ct. 1585, 14 L. Ed. 2d 626 (1965); *E. R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 81 S. Ct. 523, 5 L. Ed. 2d 464 (1961)." *VIBO Corp. v. Conway*, 669 F.3d 675, 683–84 (6th Cir. 2012).

activities, including cease-and-desist letters, unless the threatened suit is a sham.[14] *See Ancestry.com Operations, Inc. v. DNA Diagnostics Ctr., Inc.*, No. 1:15-cv-737, 2016 WL 3999315, at *4 (S.D. Ohio July 26, 2016) (citing *Rock River Commc'ns, Inc. v. Universal Music Grp., Inc.*, 745 F.3d 343, 351 (9th Cir. 2014); *In re Cardizem CD Antitrust Litig.*, 105 F. Supp. 2d 618, 637 (E.D. Mich. 2000) ("*Noerr-Pennington* immunity has been extended to non-sham, pre-litigation threats of suit, demand letters, and communications about pending suits.")); *see also Restoration Hardware, Inc.*, 2020 WL 4436357, at *3 (the litigation immunity protections of the *Noerr-Pennington* doctrine do not apply to sham actions taken for the purpose of interfering with competition) (citing *Ashley Furniture Indus., Inc. v. Am. Signature, Inc.*, No. 2:11-cv-427, 2015 WL 12999664, at *4 (S.D. Ohio Mar. 12, 2015) (citing *Static Control Components, Inc. v. Lexmark Int'l, Inc.*, 697 F.3d 387, 408 (6th Cir. 2012))). As long as there is an "'objectively reasonable" basis to litigate, a lawsuit or prelitigation activities "'cannot be a sham regardless of subjective intent.'" *Ancestry.com Operations, Inc.*, 2016 WL 3999315, at *4 (quoting *Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus.*, 508 U.S. 49, 57, 113 S. Ct. 1920, 123 L. Ed. 2d 611 (1993) ("Only if the challenged litigation is objectively meritless may a court examine the litigant's subjective motivation.")).

---

[14] The same analysis applies under Ohio law. *See Prakash v. Altadis U.S.A. Inc.*, No. 5:10-cv-0033, 2012 WL 1109918, at *11 (N.D. Ohio Mar. 30, 2012) (similar to *Noerr-Pennington*, trademark policing activities cannot serve as a basis for state law claims because of the Ohio litigation privilege, which extends to communications at every step of a proceeding, including cease and desist letters) (citations omitted).

A lawsuit or pre-litigation activity is objectively baseless when "'no reasonable litigant could realistically expect success on the merits.'" *Restoration Hardware, Inc.*, 2020 WL 4436357, at *3 (quoting *Prof'l Real Estate Inv'rs*, 508 U.S. at 60–62 (1993) (quoting *Noerr*, 365 U.S. at 144))). The issue of whether a lawsuit is objectively baseless is a question of law for the Court and may be decided on a motion to dismiss. *Ashley Furniture Indus.*, 2015 WL 12999664, at *4 (citations omitted); *see also Prof'l Real Estate Inv'rs*, 508 U.S. at 67 (the question whether a suit is objectively baseless is purely one of law).

Smucker argues that Hormel's trade dress infringement claims are objectively baseless for a number of reasons, including that the USPTO is unlikely to register SKIPPY's teal trademark, Smucker did not choose a blue lid for its No Added Sugar product to infringe Hormel's trade dress, Hormel's teal color and Smucker's blue lid color are sufficiently different, lid color is functional in the peanut butter industry, other competitors use similar colors, the SKIPPY and JIF marks are well-known and prominently displayed on the parties' respective products, and JIF's blue lid is not likely to result in consumer confusion. (Opp'n 171–72 (citing complaint).) That said, Smucker acknowledges that two of the eight factors identified by the Sixth Circuit for identifying evaluating likelihood of consumer confusion—the ultimate test for infringement—are "vaguely in Hormel's corner." (*Id*. at 173 n.8 (citing *Frisch's Rest., Inc. v. Shoney's Inc*., 759 F.2d 1261, 1264 (6th Cir. 1985) (identifying the eight factors as (1) strength of plaintiff's mark, (2) relatedness of the goods, (3) similarity of the marks, (4) evidence of actual confusion, (5) marketing channels used, (6) likely degree of purchaser care, (7) defendant's intent in selecting the mark, and (8) likelihood of expansion of product lines).)

Smucker's arguments that Hormel's trade dress infringement claims are objectively baseless amount to its position on facts relevant to the merits of Hormel's allegation of trade dress infringement. But Smucker's disagreement with Hormel on the facts and ultimate merits of Hormel's trade dress claim does not render Hormel's position objectively baseless, and is not sufficient for the Court to conclude that no reasonable litigant could expect to succeed on the merits of Hormel's trade dress infringement claims. *See Martindale Corp. v. Heartland Inns of Am. L.L.C.*, No. 08-cv-2065-LRR, 2009 WL 3246608, at *16 (N.D. Iowa Oct. 7, 2009) (Heartland's argument that Martindale's lawsuit is a sham "essentially addresses the merits of the parties' breach of contract dispute. However, a distinction must be drawn for purposes of the *Noerr–Pennington* doctrine between ultimate success on the merits and whether a lawsuit was objectively baseless. … The fact that Martindale may be wrong on the merits underlying the First Complaint does not make its lawsuit objectively baseless for purposes of *Noerr–Pennington immunity.*") (citing *IGEN Int'l, Inc. v. Roche Diagnostics GMBH,* 335 F.3d 303, 312 (4th Cir. 2003) (unfair competition action entitled to immunity because "[t]he mere existence of a possible defense to the . . . claim does not render the lawsuit a sham.")); *see also Prof'l Real Estate Inv'rs*, 508 U.S. at 60 n.5 ("A winning lawsuit is by definition a reasonable effort at petitioning for redress and therefore not a sham. On the other hand, when the antitrust defendant has lost the underlying litigation, a court must 'resist the understandable temptation to engage in *post hoc* reasoning by concluding' that an ultimately unsuccessful 'action must have been unreasonable or without foundation.'") (quoting *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 421–422, 98 S. Ct. 694, 700, 54 L. Ed. 2d 648 (1978)).

After examining the allegations in the complaint and Hormel's cease and desist letters,[15] the Court cannot conclude as a matter of law that Hormel's trade dress infringement claim is objectively baseless and that no reasonable litigant could expect to succeed on the merits.[16]

### Claims 3 and 4

In Ohio, a tortious interference with prospective economic advantage is analyzed the same way as tortious interference with business relationships. *See Jedson Eng'g, Inc. v. Spirit Constr. Servs., Inc.*, 720 F. Supp. 2d 904, 923 (S.D. Ohio 2010) ("Ohio courts have held that a claim for intentional interference with a business relationship includes intentional interference with prospective contractual relations not yet reduced to a contract.") (citing *Dolan v. Glouster,* 879 N.E.2d 838, 848 (Ohio 2007)). Tortious interference with a business relationship occurs when a person, "without a privilege to do so, induces or otherwise purposely causes a third person not to enter into or continue a business relation with another, or not to perform a contract with another." *Wilkey v. Hull*, 366 F. App'x 634, 638 (6th Cir. 2010) (quoting *A & B–Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council,* 651 N.E.2d 1283, 1294 (Ohio 1995)).

With respect to claim 4—unfair competition—"[t]o successfully establish an unfair competition claim based upon legal action, a party must show that the legal action is objectively baseless and that the opposing party had the subjective intent to injure the party's ability to be competitive." *Am. Chem. Soc. v. Leadscope, Inc.,* 978 N.E.2d 832, 843 (Ohio 2012); *Buffalo Wild Wings, Inc. v. BW-3 of Akron, Inc.*, No. 5:16-cv-1183, 2017 WL 5467156, at *7 (N.D. Ohio Nov.

---

[15] Hormel's cease and desist letters provide lengthy explanations of its position, cite case law supporting its trade dress infringement claim based upon color, state that the color teal has been on its Skippy products since the 1980's, and points to Smucker's own efforts to secure trade dress protection based upon color.  (*See e.g.* Doc. No. 1-3.)

[16] Because the Court concludes that Hormel's trade dress infringement claims are not objectively baseless, it need not address Hormel's subjective intent.

14, 2017) ("'[T]o successfully establish an unfair competition claim based upon legal action, a party must show that the legal action is objectively baseless and that the opposing party had the subjective intent to injure the party's ability to be competitive.'") (quoting *Am. Chem. Soc. v. Leadscope, Inc.*, 978 N. E. 2d 832, 843 (Ohio 2012)), *aff'd,* 763 F. App'x 558 (6th Cir. 2019).

Because the Court has determined that Hormel's allegations of trade dress infringement in its cease and desist letters are not objectively baseless, Hormel's cease and desist letters enforcing its trade dress rights are protected by both the *Noerr-Pennington* doctrine and Ohio's litigation privilege, and Smucker's claims 3 and 4 are dismissed for failure to state a plausible claim upon which relief may be granted. *See Prakash v. Altadis U.S.A. Inc.*, No. 5:10CV0033, 2012 WL 1109918, at *10–11 (N.D. Ohio Mar. 30, 2012) (dismissing state law tort claims based upon cease and desist letters because "[a]ctions taken to protect trademark rights are privileged, and the defendants who take those actions cannot be held liable for them").

### III.    Conclusion

For all the foregoing reasons, Hormel's motion to dismiss (Doc. No. 13) is granted.

**IT IS SO ORDERED**.

Dated: March 16, 2021

                                                    _____
**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**